FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 APR 15 PM 2:49

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| CARLOS TERRY, et al., | } | |
| | } | |
| Plaintiffs, | } | |
| | } | CIVIL ACTION NO. |
| vs. | } | |
| | } | CV-96-AR-1936-S |
| U.S.A. MOBILE COMMUNICATIONS, INC., | } | |
| | } | |
| Defendant. | } | |

ENTERED

APR 15 1998

**MEMORANDUM OPINION REGARDING
PLAINTIFF VENITA WATKINS**

The court has for its consideration a motion for summary judgment filed by defendant, U.S.A. Mobile Communications, Inc. ("USA Mobile"), against plaintiff, Venita Watkins ("Watkins"), in the above-entitled action. Watkins, a black female formerly employed by USA Mobile, alleges that the company violated the Civil Rights Act of 1964, *as amended*, the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981"), by failing to promote her, by failing to transfer her, and by discharging her, all on account of her race. In a related claim, Watkins alleges that USA Mobile similarly discriminated against her with respect to her compensation. For the reasons set out more fully below, the court concludes that USA Mobile is due to receive summary judgment on all but one of Watkins's claims.

1

## I. *Pertinent Undisputed Facts*

In June, 1993, Watkins began working as a temporary worker for Premiere Page, a pager service company located in Birmingham, Alabama. Pls.' Exh. 9 at 21. At all times relevant to this lawsuit, Premiere Page operated four stores in the Birmingham metropolitan area: the Homewood office, the Riverchase office, the Fairfield office, and the Roebuck office. Pls.' Exh. 5 at 22. Premiere Page later hired Watkins for regular employment as a customer service representative at its Homewood office in October, 1993. Pls.' Exh. 9 at 22-24. In March, 1994, Watkins was transferred to the Fairfield office. Id. at 24. In October, 1994, Watkins was promoted to the position of "sales support/billing" and received a $2,000 pay increase. Pls.' Exh. 9 at 27-28.

In December, 1994, USA Mobile, a national pager service company, purchased Premiere Page. Pls.' Exh. 5 at 31. USA Mobile hired Phil Lombardo ("Lombardo") in or around March or April, 1995, to be the general manager of its offices in the Birmingham area. Id. at 20-22. As general manager, Lombardo's responsibilities included reorganizing the corporate structure previously used by Premiere Page to better conform to the USA Mobile organization. Id. at 31, 66.

Part of this reorganization effort involved centralizing all billing functions, like some of those performed by Watkins, at

2

the company's Homewood office in or around March, 1995. Pls.' Exh. 9 at 27-28. At this time, Watkins did not transfer to the Homewood office. Id. at 29. Rather, she elected to remain at the Fairfield office because, according to Watkins, her supervisor, Eddie McClain ("McClain"), promised to promote her to the position of assistant store manager if she did so. Id. Watkins never received that promotion. However, on or around July 10, 1995, Leesa Taylor ("Taylor"), the company's customer service manager, offered to promote Watkins to a "billing rep" position at the Homewood office dealing with "major accounts." Id. at 41-42. Unfortunately, Watkins was discharged before she assumed the "billing rep" position.

The circumstances surrounding Watkins' discharge are not complicated. On a time card submitted on July 5, 1995, Watkins indicated that planned to work from 9:00 a.m. to 1:00 p.m. on Saturday, July 8, 1995. Def.'s Exh. F. As a result, Watkins received four hours worth of overtime pay in advance. Pls.' Exh. 9 at 77. However, on her time card submitted on July 19, 1995, Watkins again indicated that she had worked from 9:00 a.m. to 1:30 p.m. on Saturday, July 8, 1995. Def.'s Exh. G. Mary Moon ("Moon"), the company's human resources director, noticed that Watkins had reported the overtime twice and brought the matter to Lombardo's attention. Pls.' Exh. 4 at 102-03. Based on the two time cards, Moon and Taylor concluded that Watkins was attempting

3

to be paid twice for the same overtime. Id. at 106; Pls.' Exh. 10 at 65. Under USA Mobile's policy, the company can discharge an employee for falsifying any information on his or her time card. Def.'s Exh. J at 20-21. When confronted about the apparent discrepancy, Watkins claims that she tried to explain to Taylor that, because she actually worked until 1:30 P.M. on July 8, 1995, the was merely requesting an additional thirty minutes of overtime on the July 19, 1995, time card. Pls.' Exh. 9 at 76-77. However, Taylor disregarded this explanation and discharged Watkins on July 20, 1995 for time card falsification. Pls.' Exh. 9 at 74-75.

Watkins filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 15, 1995. On July 29, 1996, Watkins joined the above-entitled action by amended complaint.

## II. *Summary Judgment Standard*

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Fed.R.Civ.P. In addition, the Eleventh Circuit has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is

4

entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). USA Mobile has invoked Rule 56.

### III. *Discussion*

As noted above, Watkins brings three claims against USA Mobile.[1] First, she alleges disparate treatment in pay. Pls.' Brf. at 31. Second, she alleges disparate in promotions and transfers. Pls.' Brf. at 30. Lastly, she alleges discriminatory treatment with respect to her discharge. Pls. Brf. at 28. The court will address each of these allegations in turn.[2]

#### A. **Watkins's Unequal Pay Claim**

Watkins alleges that she failed to receive the same pay as similarly situated white employees at USA Mobile. In support of this claim, Watkins says that she heard from a black coworker, Michele Jackson ("Jackson"), that her supervisor, Eddie McClain ("McClain"), once said, "if the niggers in Fairfield knew what

---

[1] Paragraphs 20-23 and paragraph 36 of Watkins's First Amended Complaint allege a number of claims against USA Mobile. However, in her brief opposing the company's motion for summary judgment, she does not address any claims other than those discussed herein. Therefore, the court assumes for purposes of this opinion that Watkins has abandoned all claims except those addressed in her opposition brief. Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 899 (11th Cir.) (explaining that "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relief upon on summary judgment are deemed abandonend"), *cert. denied*, 516 U.S. 817, 116 S. Ct. 74 (1995).

[2] Watkins brings each of her claims pursuant to both Title VII and § 1981. Except as otherwise indicated, the court will allow her claims to proceed under both statutes.

5

they were making in Riverchase, they would be upset about it." Pls.' Exh. 9 at 53-54. Jackson allegedly heard McClain make this remark. Id. at 53. According to Watkins, McClain's statement constitutes **direct** evidence of wage discrimination. Pls.' Brf. at 31. It sounds more like double hearsay.

The Eleventh Circuit defines direct evidence as "evidence, which if believed, proves the existence of fact in issue without inference or presumption." Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998). Moreover, it is well settled in this circuit that, as a result of this relatively narrow definition, "not every remark made in the workplace constitutes direct evidence of discrimination." Allen v. City of Athens, 937 F. Supp. 1531, 1538 (N.D. Ala. 1996). Indeed, statements by non-decisionmakers, or statements by decisionmakers that are unrelated to the challenged decision, do not qualify as such direct evidence. See Trotter v. Bd. of Trustees of the Univ. of Ala., 93 F.3d 1449, 1453-55 (11th Cir. 1996) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 277, 109 S.Ct. 1775, 1804-05 (1989) (O'Connor, J., concurring)).

In light of the above standard, it is clear that McClain's alleged statement does not constitute direct evidence of racially motivated wage discrimination for two reasons. First, there is no evidence whatsoever that McClain had any decisionmaking authority over compensation either for Watkins or for any other

6

employee at USA Mobile. Consequently, because McClain had no such decisionmaking authority, his statement, if it was made, amounts to nothing more than an ugly stray remark that cannot serve as direct evidence of discriminatory intent under Title VII or § 1981. Second, and perhaps more important, in order to accept McClain's alleged statement as conclusive evidence of some discriminatory intent, it is necessary for one to **infer** that employees at the company's Riverchase office are paid more than those at its Fairfield office. The statement, standing alone, does not make the alleged pay disparity explicit. As noted above, "[d]irect evidence . . . is evidence that does not require such an inferential leap between fact and conclusion." Carter, 132 F.3d at 642. Therefore, given that McClain's alleged statement requires an inference, it cannot constitute direct evidence as defined by the Eleventh Circuit.

As Watkins presents no other relevant evidence in support of her claim of disparate treatment in pay, the court concludes that summary judgment is appropriate on said claim.

### B. Watkins's Failure to Promote and Transfer Claims

According to Watkins, in June, 1995, USA Mobile hired a white female, Elizabeth Greer ("Greer"), to fill the position of "billing rep" in its Homewood office. Pls.' Brf. at 30. Watkins claims that, in so doing, the company denied her a promotion to that position because of her race. Id. at 31. USA Mobile

7

counters this claim by arguing that Watkins cannot make out a prima facie case for discrimination in promotions. The company's argument is well taken.

In order to establish a prima facie case for disparate treatment in promotions, Watkins must demonstrate: (1) that she is a member of a protected class; (2) that she was qualified for the position in question; (3) that she applied for and failed to receive that position; and (4) that the promotion went to an equally or less qualified non-minority. <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997). However, as USA Mobile correctly observes, Watkins puts forward no evidence whatsoever to show that she was equally or more qualified than Greer for the "billing rep" position. Obviously, without such evidence, she has failed to satisfy an essential element of her prima facie case. Therefore, the court concludes that USA Mobile is due to receive summary judgment on Watkins's failure to promote claim.

Watkins also claims that, because of her race, USA Mobile refused to honor her request for a transfer from the company's Fairfield office to its headquarters in Homewood. In order to establish a prima facie case for discrimination in transfers, Watkins must demonstrate: (1) that she is a member of a protected class; (2) that she was qualified to receive the transfer in question; (3) that she applied for that transfer and was

8

rejected; and (4) that the employer continued to seek applicants from outside the protected class with similar qualifications. *See* Taylor v. Hudson Pulp & Paper Co., 788 F.3d 1455, 1459 (11th Cir. 1986) (articulating prima facie case where plaintiffs alleged discriminatory denial of transfers); *see also* Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996) (rejecting "overly strict formulation of elements of a *prima facie* case" for employment discrimination). However, as with her failure to promote claim, it is clear that Watkins cannot make out the necessary prima facie case.

The record indicates that, even if one assumes that Watkins can satisfy the other three elements of her prima facie case, she cannot show that USA Mobile ever **rejected** her request for a transfer to the Homewood office. Rather, the record reveals that, when other employees of comparable rank were being transferred to the Homewood office, Watkins was given the choice to remain in the Fairfield office, and she **elected** to do so.[3]

---

[3] Watkins attempts to de-emphasize the importance of her choice to remain in the Fairfield office by stressing that she chose to do so only as a result of McClain's promise to make her assistant store manager. Pls.' Brf. at 30. As noted above, Watkins never received that promotion, and the company ultimately eliminated that position entirely. Pls.' Exh. 9 at 40-41. Apparently, this argument is meant to suggest that USA Mobile somehow tricked her into refusing the transfer to Homewood.
   This argument is unpersuasive two reasons. First, Watkins presents nothing to suggest that McClain's promise of the promotion was made in bad faith. The fact that there is no evidence that McClain knew the position was slated for elimination when he made the promise to Watkins, and the fact that no one else received that promotion before the position was phased out, supports this conclusion. Second, there is no evidence to suggest that the decision to eliminate the position was anything other than a part of the company's organizational restructuring. Put another way, there is no evidence

Pls.' Exh. 9 at 27-30. Clearly, the court cannot impute an inference of racial discrimination to the employer where the challenged decision was, in fact, made by the employee herself. Accordingly, the court concludes that USA Mobile is entitled to summary judgment on Watkins claim for disparate treatment in transfers.

### C. Watkins's Discharge Claim

Watkins claims that her discharge for falsifying her time card was merely a pretext for race discrimination. In order to establish a prima facie case for discriminatory discharge, Watkins must prove: (1) that she is a member of a protected class; (2) that she was qualified for the position in question; (3) that she was discharged; and (4) that the employer filled her former position with a nonminority. <u>Edwards v. Wallace Community College</u>, 49 F.3d 1517, 1521 (11th Cir. 1995). Although Watkins makes no discernable attempt to make out her prima facie case, USA Mobile does not contest her ability to do so. Accordingly, for purposes of this opinion, the court assumes that Watkins can make her prima facie case for discriminatory discharge.

However, by articulating a legitimate, nondiscriminatory reasons for its decision to discharge Watkins, USA Mobile has successfully rebutted any inference of discrimination created by

---

that the company induced Watkins to refuse the transfer because she is black. Absent such evidence, she cannot ask the court to overlook her decision to refuse the transfer to the Homewood office.

her prima facie case. <u>Howard v. BP Oil Co., Inc.</u>, 32 F. 3d 520, 524 (11th Cir. 1994). Taylor testified that she fired Watkins for falsifying her time card. Pls.' Exh. 10 at 67. With USA Mobile having met its exceedingly light burden, the burden now shifts to Watkins to show that this reason is merely a pretext for race discrimination. <u>Howard</u>. 32 F.3d at 525.

To establish pretext, Watkins "has the opportunity to come forward with evidence, including previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." <u>Combs</u>, 106 F.3d at 1528. Watkins advances two points in an effort to show that the company's proffered rationale for her discharge is pretextual.

First, she contends that her superiors at USA Mobile have made inconsistent statements as to why she was discharged. Pls.' Brf. at 29-30. Although inconsistent statements by the employer about the rationale for its challenged decision **may** constitute evidence of pretext, <u>Howard</u>, 32 F.3d at 526, such is not the case here. Taylor, the manager who discharged Watkins, unambiguously testifies in her deposition that she did so because she believed that Watkins was trying to be paid twice for the same overtime period. Pls.' Exh 10 at 62. Moon's deposition testimony mirrors Taylor's explanation. Pls.' Exh. 4 at 102-07. Moreover,

11

according to Watkins's deposition testimony, this is the same reason that Taylor and Moon gave to her when they informed her of her discharge. Pls.' Exh. 9 at 76. Finally, while McClain and Lombardo may recall the facts surrounding the decision to fire Watkins somewhat less clearly than Taylor and Moon, the fact that they played virtually no role in that decision cuts short Watkins's ability to characterize the inconsistencies in their testimony, if there are any, as being material. Pls.'s Exh. 5 at 228-29; Pls.' Exh. 8 at 146. Based on this evidence, the court cannot say that Watkins has demonstrated any material inconsistency in the company's articulation of its rationale that is sufficient to create a jury question regarding pretext.

Second, Watkins maintains that the person who made the decision to discharge her used racial slurs in the workplace.[4] According to Watkins, because Taylor has demonstrated a bias against blacks, there is sufficient evidence from which a jury could conclude that company's proffered rationale is unworthy of belief. Viewing the record as a whole, the court agrees.

The Eleventh Circuit has said that "'[t]he biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case,'" Holifield v. Reno, 115 F.3d 1555, 163-64 (11th Cir. 1997) (quoting

---

[4] According to plaintiff Cecil Walker, during a personal phone call, Taylor said "that nigger got off" to an unknown third-party in response to the verdict in the O.J. Simpson trial. Pls.' Exh. 13 at 91-92.

Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (11th Cir. 1990)); however, such is not the case here. Rather, in this instance, Watkins has presented evidence of a general racial bias on the part of the relevant decisionmaker — Taylor. Furthermore, the mere fact that Taylor's alleged slur has no nexus to Watkins does not, as USA Mobile suggests, completely rob the statement of its probative value regarding her discharge. According to the Eleventh Circuit:

> When employers . . . without concern for particulars, make broad, derogatory statements about a gender or a race and, thus, demonstrate a general discriminatory animus toward that protected group, the scope of that evidence can be as broad as the statements. . . . [A] comment, which was narrowly tailored to a particular event, [can] constitute [circumstantial] evidence for a case based on a separate event.

Bd. of Trustees of Ga. Military College, 125 F.3d 1390, 1393 n.7 (11th Cir. 1997). Although it is a close call, in the court's view, when one considers that both McClain and Taylor described Watkins as a good employee, and that Watkins made the company aware that it misunderstood her notations on the second time card,[5] Taylor's slur provides a basis from which a jury could conclude that the company's articulated rationale is incredible. Put another way, there is sufficient evidence in the record from which a jury could find that Taylor's apparent racism motivated

---

[5] Recall that, according to Watkins, she explained to both Moon and Taylor that, because she worked thirty minutes more than she was scheduled to work on on Saturday, July 8, 1995, her notation on the second time card was merely a request for an additional thirty minutes of overtime. Pls.' Exh. 9 at 76-77. According to Watkins, Taylor flatly refused to listen to this explanation or rconsider her decision to fire Watkins.

the harsh manner in which she dealt with Watkins about the discrepancy in her time cards. Thus, as per <u>Combs</u>, summary judgment is inappropriate as to Watkins's claim for discriminatory discharge.

## IV. *Conclusion*

The court will enter a separate and appropriate order in keeping with this memorandum opinion.

DONE this __15__ day of ~~March~~ April, 1998.

                                              */s/ William M. Acker*
                                        WILLIAM M. ACKER, JR.
                                        UNITED STATES DISTRICT JUDGE