FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

'98 APR 15 PM 2: 49

U.S. DISTRICT COURT
N.D. OF ALABAMA

CARLOS TERRY, et al.,         }
                              }
     Plaintiffs,              }
                              }    CIVIL ACTION NO.
     vs.                      }
                              }    CV-96-AR-1936-S
U.S.A. MOBILE COMMUNICATIONS, }
INC.,                         }
                              }
     Defendant.               }

CRo

ENTERED

APR 15 1998

### MEMORANDUM OPINION REGARDING PLAINTIFF CARLOS TERRY

The court has before it a motion for summary judgment filed by defendant, U.S.A. Mobile Communications, Inc. ("USA Mobile"), against plaintiff, Carlos Terry, ("Terry"), in the above-entitled action. Terry, a black male formerly employed at USA Mobile alleges that the company violated the Civil Rights Act of 1964, *as amended*, the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), by discharging him because of his race. In a related claim, Terry alleges that USA Mobile discharged him in retaliation for his complaints about racial discrimination at the company. As explained below, the court concludes that summary judgment is not appropriate on any of Terry's claims.

### I. *Pertinent Undisputed Facts*

In August 1995, Terry began working as an "inside sales representative" for USA Mobile, a national pager company with offices in Birmingham, Alabama. Pls.' Exh. 8 at 12, 91. At all

81

times relevant to this lawsuit, USA Mobile operated four stores in the Birmingham metropolitan area: the Fairfield office, the Homewood office, the Riverchase office, and the Roebuck office. Pls.' Exh. 5 at 22. Terry was initially assigned to the Riverchase office. Pls.' Exh. 8 at 12, 91. As an inside sales representative, Terry's primary responsibility was to assist walk-in customers, including the receipt of cash payments. During the time that Terry worked at the Riverchase office, his immediate supervisor was Susan Brown, who, in turn, reported to Eddie McClain ("McClain"), the company's inside sales manager. Id. at 94-95.

On January 5, 1996, Lisa Evans ("Attorney Evans"), an attorney employed by USA Mobile to investigate charges filed against the company with the Equal Employment Opportunity Commission ("EEOC"), interviewed Terry and several other employees. Pls.' Exh. 83 at ¶ 2. According to Terry, during this interview, he told her "everything about the company that he thought was discriminatory, including the fact that African Americans were denied promotions because of their race." Pls.' Brf. at 50; Pls.' Exh. 20 at 16, 72-73. Terry also maintains that, almost immediately after his interview with Attorney Evans, white managers at USA Mobile began to give him the "cold shoulder." Id. at 18, 80-84, 96-98.

On January 8, 1996, Mary Ann Dennis ("Dennis"), a customer

2

service supervisor at USA Mobile, learned that a client's account had not received credit for a cash payment. Pls.' Exh. 15 at 52. After some research, Dennis linked this error to Terry. Dennis conducted further research and discovered other errors involving Terry and missing cash payments. Id. at 54. Dennis brought these errors to the attention of Leesa Taylor ("Taylor"), the company's customer service manager. Pls.' Exh. 10 at 30-31. Taylor enlisted the help of McClain, and, together, they conducted a wider investigation into other missing cash payments. Pls.' Exh. 5 at 171. McClain and Taylor presented the results of this investigation to Phil Lombardo ("Lombardo"), USA Mobile's general manager. Id. at 172. Based on the results of the investigation, Lombardo concluded that Terry was stealing company funds. Id. at 167-68.

On January 16, 1996, Terry filed a charge of discrimination with the EEOC. On January 22, 1996, Lombardo discharged Terry for "misappropriation" of company funds. Id. at 174; Def.'s Exh. F. In the course of doing so, Lombardo requested that Terry sign a release of all claims he might have against USA Mobile. Def.'s Exh. F. Fearing that he would be prosecuted by the company, Terry signed the release. Terry filed an amended EEOC charge on January 25, 1996. This lawsuit followed.

## II. *Summary Judgment Standard*

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Fed.R.Civ.P. In addition, the Eleventh Circuit has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). USA Mobile has invoked Rule 56.

## III. *Discussion*[1]

On the day Lombardo discharged Terry for allegedly misappropriating company funds, he asked Terry to sign a document entitled "SETTLEMENT AGREEMENT AND WAIVER AND RELEASE OF ALL CLAIMS." Def.'s Exh. F. This document provided:

> In consideration for the Company's relinquishing of its legal right to pursue me civilly to recover these monies, I hereby promise and agree that I will not pursue any legal

---

[1] Paragraphs 6-14 and paragraph 36 of Terry's First Amended Complaint allege a number of claims. However, in his brief opposing USA Mobile's motion for summary judgment, he does not address any claims other than those discussed herein. Therefore, the court assumes for purposes of this opinion that Terry has abandoned all other claims except those addressed in his opposition brief. Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.) (explaining that "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"), *cert. denied*, 516 U.S. 817, 116 S.Ct. 74 (1995).

4

>     rights I may have with any administrative agency nor in any
>     other forum and completely release USA Mobile Communications
>     from any and all claims, including, but not limited to
>     claims of sex, race, national origin, handicap, religious,
>     and age discrimination and retaliation under local, state or
>     federal statutes.

Id. As noted above, because he feared that USA Mobile would prosecute him, Terry signed the document. Pls.' Exh. 20 at 164. According to USA Mobile, this release now bars all of Terry's claims. As a preliminary matter, the court addresses the merit of the company's argument.

The federal courts long have recognized that an employee can waive his rights under Title VII and § 1981 in a private settlement with his employer, provided that he both **knowingly** and **voluntarily** consents to the release. Puentes v. United Parcel Service, Inc., 86 F.3d 196, 198 (11th Cir. 1996); Beadle v. City of Tampa, 42 F.3d 633, 635 (11th Cir. 1995). Courts determine whether an employee knowingly and voluntarily executed such a release by examining the totality of the circumstances. Puentes, 86 F.3d at 198. The factors used in conducting this examination include: (1) the employee's education and business experience; (2) the amount of time the employee considered the release before signing it; (3) the clarity of the release; (4) the employee's opportunity to consult an attorney; (5) the employer's encouragement or discouragement of consultation with an attorney; and (6) the consideration given in exchange for the release as compared with the benefits to which the employee was entitled

5

already. Id.; Beadle, 42 F.3d at 635 (citing Gormin v. Brown-Foreman Corp., 963 F.2d 323, 327 (11th Cir. 1992)).

In the instant case, it is either an undisputed fact that Terry did not knowingly or voluntarily consent to the release, or a jury issue is presented. Several considerations support this view. First, the record clearly indicates that Terry spent no more than a few minutes reviewing the release before he signed it. Pls.' Exh. 20 at 163-66; Pls.' Exh. 8 at 135-36. As Terry correctly observes, the Eleventh Circuit considers any period of less than twenty-four hours to be insufficient time in which to fairly consider such a release. See Puentes, 86 F.3d at 199 (explaining that "twenty-four hours is too short a period" for employee to decide whether to sign release). Second, according to Terry's deposition testimony, he did not even read the release before signing it. Pls.' Exh. 20 at 163-64. Third, there is nothing in the record to suggest that Terry had an opportunity to consult an attorney or other appropriate counsel prior to signing the release. Id. at 163-66. Fourth, considering that Terry was never more than a relatively junior, hourly employee at USA Mobile, it is highly unlikely that his business experience, if he had any, would have enabled him to evaluate such a release, regardless of its clarity, very effectively. Therefore, with these considerations in mind, the court concludes that Terry's release cannot constitute an effective waiver of his Title VII

and § 1981 claims against USA Mobile unless and until a jury answers a special interrogatory, finding that he signed it knowingly and voluntarily. See Puentes, 86 F.3d at 199-200 (reversing trial court's grant of summary judgment where employer allegedly gave employees only twenty-four hours to consider release of Title VII and § 1981 claims); see also Beadle, 42 F.3d at 636 (affirming trial court's conclusion that employee did not knowingly and voluntarily consent to release where record indicated that employee "spent short amount of time reviewing the document and that he did not consult with attorney").

Having determined that the release does not bar Terry's claims, the court will now address his claims for discriminatory discharge and retaliatory discharge in turn.[2]

### A. Terry's Discharge Claims

Terry alleges that his discharge for allegedly misappropriating company funds was racially motivated. Where, as here, a plaintiff seeks to prove disparate treatment under Title VII by using circumstantial evidence, he must first satisfy some variation of the prima facie case first articulated by the Supreme Court of the United States in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). For example, in order to make a prima facie case for discriminatory discharge, Terry

---

[2] Terry brings each of his claims pursuant to both Title VII and § 1981. Except as otherwise noted, the court will allow his claims to proceed under both statutes.

must demonstrate: (1) that he is a member of the class protected by Title VII; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) that, after his discharge, the employer filled his former position with a nonminority. See Edwards v. Wallace Community College, 49 F.3d 1517, 1521 (11th Cir. 1995) (setting out elements to prima facie case for discriminatory discharge under Title VII).  If Terry establishes a prima facie case for discriminatory discharge, then the burden of production shifts to USA Mobile to establish evidence of a legitimate, nondiscriminatory reason that explains why it took the employment action that it did. See Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1375 (11th Cir. 1996) (articulating employer's burden).  Finally, if USA Mobile meets this exceedingly light burden, then the burden shifts to Terry to show that the reason given by the company is, in fact, a pretext for race discrimination.  See id (explaining burden with respect to pretext).  Given that the same substantive analysis applies to claims brought under § 1981, the court will consider Terry's discharge claim under both Title VII and § 1981 simultaneously. Clark v. City of Macon, 860 F. Supp. 1545, 1552 (M.D. Ga. 1994).

Although USA Mobile does not challenge Terry's ability to make out the first three elements of his prima facie case, it does contend that Terry has failed to show that a nonminority replaced him.  This contention is not well taken.  Terry not only

unambiguously alleges that a white male, Joey Racca, replaced him following his discharge, Pls.' Brf. at 53, but McClain's deposition testimony confirms that Joey Racca did so. Pls.' Exh. 8 at 155. Accordingly, the court concludes that Terry has satisfied his prima facie burden. Despite the company's assertion to the contrary, the mere fact that Joey Racca did not **_immediately_** replace Terry does nothing to undermine this conclusion. See Brown v. Am. Honda Motor Co., 939 F.2d 946, 949 (11th Cir. 1991) (describing prima facie burden of Title VII and § 1981 plaintiff as "not onerous"), cert. denied, 502 U.S. 1058, 112 S.Ct. 935 (1992); cf. Turlington v. Atlanta Gas Light Co., 1998 WL 80420 at *3 (11th Cir.) (describing ADEA plaintiff's prima facie burden as "light").

However, by articulating a legitimate, nondiscriminatory reason for discharging Terry, USA Mobile has successfully rebutted Terry's prima facie case. Because the record reflects that USA Mobile discharged Terry based on its belief that he had stolen company funds, Pls.' Exh. 5 at 174; Pls.' Exh. 8 at 136, the burden shifts again to Terry to show that this reason is merely a pretext for race discrimination.

To establish pretext, Terry "has the opportunity to come forward with evidence, including previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the

employer were not the real reasons for the adverse employment decision." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). Terry tries to demonstrate pretext in two ways.

In his initial effort to demonstrate pretext, Terry claims that "a white female Stephanie Evans came up short in her money drawer and was not even issued a written discipline." Pls.' Brf. at 54. As support for this claim, Terry points to a memorandum detailing an imbalance in Stephanie Evans's "batch" on May 5, 1995. Pls.' Exh 42. According to Terry, the fact that a white employee involved in cash mismanagement was not discharged demonstrates that his own termination for stealing company funds was racially motivated. The court disagrees.

It is axiomatic that, unless a plaintiff's proffered comparator is, in fact, similarly situated to the plaintiff in all relevant respects, evidence that the comparator received more favorable treatment does not establish pretext. See Holifield v. Reno, 115 F.3d 1555, 1562-63 (11th Cir. 1997) (explaining that, absent other evidence of discrimination, summary judgment is appropriate if plaintiff fails to show the existence of a similarly situated employee). For better or for worse, the law simply does not concern itself with whether apples and oranges receive unequal treatment. See Nix v. WLCY\Rahall Communications, 738 F.2d 1181, 1186 (11th Cir. 1984) (observing

10

that "[i]f an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown"). As USA Mobile correctly observes, in the instant case, Terry makes no discernable effort to show that he and Stephanie Evans ("Evans") were similarly situated in any way whatsoever. In particular, there is no evidence to indicate that the company required Evans and Terry to follow the same cash management procedures or that it ever suspected Evans of stealing company funds. Without such evidence, the mere fact that the company retained Evans despite a cash imbalance in her "batch" does not create a jury question. See Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989) (stating "burden is on [plaintiff] to show a similarity between [his] conduct and that of white employees who were treated differently").

Terry also tries to demonstrate pretext by claiming that the two managers who were principally responsible for the investigation that led to his discharge — McClain and Taylor — used racial slurs in the workplace.[3] Pls.' Brf. at 53-54. According to Terry, given that Lombardo predicated his decision to discharge Terry exclusively on the results of the investigation conducted by McClain and Taylor, their use of such

---

[3] According to plaintiff Cecil Walker, during a personal phone call, Taylor said "that nigger got off" to an unknown third party in response to the verdict in the O.J. Simpson trial. Pls.' Exh. 13 at 91-92. According to several other USA Mobile employees, McClain repeatedly used the word "nigger" and often told racially oriented jokes at work. Pls. Exh. 9 at 51, 67-68; Pls.' Exh. 13 at 83; Pls.' Exh. 21 at 23-28; Pls.' Exh. 27 at 49-52.

11

slurs is sufficient to create a jury question as to whether racial bias contaminated the challenged decision. Although it is a close call, when the evidence is viewed in the light most favorable to Terry, the court agrees.

The Eleventh Circuit has said that "[t]he biases of one who neither makes nor *influences* the challenged personnel decision are not probative in an employment discrimination case," Holifield, 115 F.3d at 1563-64 (emphasis supplied and internal quotation marks omitted); however, such is not the case here. Rather, in the instant case, there is evidence of racial animus on the part of both McClain and Taylor — the two management employees who conducted the investigation that exclusively influenced Lombardo's decision to discharge Terry. Furthermore, although the slurs attributed to McClain and Taylor have no nexus to Terry, this fact does not, as USA Mobile suggests, completely rob the remarks of their probative value concerning Terry's discharge. According to the Eleventh Circuit:

> When employers . . . without concern for particulars, make broad, derogatory statements about a gender or a race and, thus, demonstrate a general discriminatory animus toward that protected group, the scope of that evidence can be as broad as the statements. . . . [A] comment, which was narrowly tailored to a particular event, [can] constitute [circumstantial] evidence for a case based on a separate event.

Burrell v. Bd. of Trustees of Ga. Military College, 125 F.3d 1390, 1393 n.7 (11th Cir. 1997). Consequently, from this evidence, it is possible that a jury could find that McClain and

12

Taylor's apparent racism contaminated the investigation and, consequently, the challenged employment action. Therefore, as per <u>Combs</u>, summary judgment is not appropriate on Terry's discharge claim. See <u>Weaver v. Casa Gallardo</u>, 922 F.2d 1515, 1526 (11th Cir. 1991) (upholding finding of pretext and explaining that, although plaintiff did not attribute racial bias to terminating supervisor, "the district court might well have concluded that he was influenced by" racism of fellow managers); cf. <u>Miles v. M.N.C. Corp.</u>, 750 F.2d 867, 871-72 (11th Cir. 1985) (explaining that employer did not meet its burden of production where plaintiff offered evidence suggesting employee evaluation process was tainted).

### B. Terry's Retaliation Claim[4]

Terry also alleges that USA Mobile retaliated against him because he complained about racial discrimination in a meeting with Attorney Evans on January 5, 1996. In response, USA Mobile argues that Terry cannot make out the requisite prima facie case.

To establish a prima facie case for retaliation in violation of Title VII, Terry must demonstrate: (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) the existence of a causal connection

---

[4] In his brief opposing USA Mobile's motion for summary judgment, Terry discusses his retaliation claim only within the context of Title VII. Accordingly, for purposes of this opinion, the court assumes that his retaliation claim is **not** brought pursuant to § 1981.

13

between the protected expression and the adverse action. <u>Raney v. Vinson Guard Serv.</u>, 120 F.3d 1192, 1196 (11th Cir. 1997). Moreover, the Eleventh Circuit recently explained what a plaintiff must show to make out the third element of the prima facie retaliation by observing:

> To meet the causal link requirement, the plaintiff "merely has to prove that the protected activity and the negative employment action are not completely unrelated." (Citation omitted). The plaintiff must at least establish that the employer was actually aware of the protected expression at the time the employer took adverse employment action against plaintiff.

<u>Holifield</u>, 115 F.3d at 1566. This standard reflects the Eleventh Circuit's long-standing position that the causal connection requirement is to be broadly construed. <u>Meeks v. Computer Assocs. Internat'l</u>, 15 F.3d 1013, 1021 (11th Cir. 1994).

Initially, Terry attempts to make out his prima facie case by showing that, following his complaint of racial discrimination at USA Mobile to Attorney Evans, the company denied him a promotion to the position of "floater" and instead awarded that position to a white employee, Jeff Sims ("Sims"). Terry contends that the failure to award him the "floater" position constitutes an adverse employment action occasioned by his protected expression. The court finds this contention to be unpersuasive for two reasons.

First, while it is clear the company contemplated creating the floater position at one time, it is equally clear that it never followed through on that proposal. Pls.' Exh. 5 at 162;

14

Pls.' Exh. 8 at 106-07.  In other words, the floater position never officially existed at USA Mobile.  Obviously, an employer cannot retaliate against an employee by failing to promote him to a position that does not exist.  Second, there is no evidence that the company ever awarded the floater position to Sims, either officially or otherwise.  In fact, the record suggests just the opposite.  According to Terry, a pay increase was to accompany his promotion to the floater position.  Pls.' Exh. 20 at 95; Pls.' Brf. at 50.  However, the record indicates that, although Sims later performed some of the duties associated with the floater position, he never received a pay increase for doing so.  Pls.' Exh. 5 at 165; Pls.' Exh. 8 at 108.  In short, absent some evidence that the company either created or filled the floater position, Terry's allegations concerning Sims do not demonstrate that he suffered an adverse employment action.

   Terry also tries to make out his prima facie case for retaliation by claiming that, following his interview with Attorney Evans, the company discharged him.  In response, USA Mobile does not dispute that Terry can make out the first two elements of his prima facie case.  Rather, the company challenges the causal connection between the two events.  More specifically, the company contends that Terry cannot show that Lombardo was aware of his complaint at the time of Terry's discharge.  USA Mobile's contention is not well taken.

It is well settled that an employee may use circumstantial evidence to establish the employer's awareness of his protected expression. <u>Goldsmith v. City of Atmore</u>, 996 F.2d 1155, 1163 (11th Cir. 1993); <u>Weaver v. Casa Gallardo</u>, 922 F.2d 1515, 1524 (11th Cir. 1991). In the instant case, such evidence abounds. First, in his deposition, Lombardo testifies that he was aware of the purpose behind Attorney Evans's trip to Alabama, namely, to question employees about possible racial discrimination at the company. Pls.' Exh. 5 at 152. Second, Terry testifies in his affidavit that Lombardo saw him exit his meeting with Attorney Evans. Pls.' Exh 83 at ¶6. Third, in his deposition, Terry testifies that, almost immediately after his interview with Attorney Evans, the social dynamic at the company changed entirely. Pls.' Exh. 20 at 18, 80-84. For example, according to Terry, he and McClain often engaged in casual conversation prior to January 5, 1996; however, after Terry spoke with Attorney Evans, McClain allegedly stopped speaking to him entirely. <u>Id</u>. at 82. Finally, there is the fact that USA Mobile discharged Terry less than three weeks after his complaint about racial discrimination. As the court discusses elsewhere in this case, such a close "time-link" between the challenged action and the protected expression, standing alone, can be sufficient to establish the necessary causal connection. See <u>Donnellon v. Fruehauf Corp.</u>, 794 F.2d 598, 601 (11th Cir. 1986) (finding

16

causal connection because only one month passed between protected expression and challenged employment decision); <u>Balletti v. Sun-Sentinel Co.</u>, 909 F. Supp. 1539, 1549 (S.D. Fla. 1995). Drawing all inferences in Terry's favor, the court concludes that this evidence sufficiently demonstrates that Terry's complaint and his discharge are not wholly unrelated and that Terry has satisfied his prima facie burden.

However, as with Terry's discharge claim, by articulating a legitimate, nondiscriminatory reasons for Terry's discharge, USA Mobile has successfully rebutted any inference of retaliation created by his prima facie case. <u>E.E.O.C. v. Reichhold Chem., Inc.</u>, 988 F.2d 1564, 1571-72 (11th Cir. 1993). The record clearly indicates that the company believed that Terry was guilty of stealing company funds. Pls.' Exh. 5 at 167. Consequently, as USA Mobile has satisfied its burden of production, the burden now shifts to Terry to show that this reason is merely a pretext for retaliation. <u>Meeks</u>, 15 F.3d at 1021; <u>Goldsmith</u>, 996 F.2d at 1163.

As evidence of pretext, Terry points to the fact that, in addition to himself, USA Mobile fired at least three other black employees — Ingar Bass,[5] Monica Sellers, and Cecil Walker — shortly after they complained to Attorney Evans about racial

---

[5] Although Terry's brief mentions an "Inga Johnson," the court could find nothing in the record that referred to Inga Johnson. Thus, for purposes of this opinion, the court assumes Terry intends to refer to Ingar Bass instead.

17

discrimination on January 5, 1996.[6] According to Terry, this evidence demonstrates a pattern of retaliatory conduct that calls the credibility of the company's proffered reason for his discharge into question. The court agrees. The similarity between these other employees and Terry is both striking and suspicious: All four employees made a similar complaint to the same person and were discharged within two months of doing so. Notably, USA Mobile fails to offer anything that either disputes or explains this very curious coincidence. In the court's view, when all inferences are drawn in Terry's favor, this evidence, coupled with the ample evidence establishing the causal connection, is sufficient to create a jury question as to pretext. Thus, as per <u>Combs</u>, summary judgment is not appropriate on his retaliation claim.

---

[6] In her EEOC charge, Ingar Bass claims that she complained about racial discrimination to a USA Mobile attorney (presumably Attorney Evans) in late December, 1995 or early January, 1996. The company discharged Bass on March 4, 1996. Pls.' Exh. 41. Monica Sellers and Cecil Walker complained to Attorney Evans about racial discrimination and harassment at the company on January 5, 1996. The company discharged Sellers and Walker on March 4, 1996 and January 23, 1996, respectively. Pls.' Exh. 14 (Bates No. 0002169); Pls.' Exh. 39; Pls.' Exh. 62 at ¶ 4; Pls.' Exh. 71 at ¶¶ 3, 7.

## IV. *Conclusion*

The court will enter a separate and appropriate order in accordance with this memorandum opinion.

DONE this 15ᴿ day of April, 1998.

*/s/ William M. Acker*
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE