UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

'98 APR 15 PH 2:48

U.S. DISTRICT COURT
N.D. OF ALABAMA

CARLOS TERRY, et al.,⎫
⎬
    Plaintiffs,⎫
⎬
    vs.⎫
⎬
U.S.A. MOBILE COMMUNICATIONS,⎫
INC.,⎫
⎬
    Defendant.⎫

CIVIL ACTION NO.

CV-96-AR-1936-S

*Cho*

**ENTERED**

APR 15 1998

## MEMORANDUM OPINION REGARDING PLAINTIFF MICHELE JACKSON

The court has for its consideration a motion for summary judgment filed by defendant, U.S.A. Mobile Communications, Inc. ("USA Mobile"), against plaintiff, Michele Jackson ("Jackson"), in the above-entitled action. Jackson, a black female formerly employed by USA Mobile, alleges that the company violated the Civil Rights Act of 1964, *as amended*, the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), by subjecting her to disparate treatment with respect to her discharge, her compensation, her job assignments, and her promotional opportunities, all on account of her race. For the reasons set out more fully below, the court concludes that USA Mobile is entitled to summary judgment on Jackson's failure to promote claims only.

## I. *Pertinent Undisputed Facts*

In August 1993, Jackson began working for Premiere Page, a
pager service company located in Birmingham, Alabama, as a
"customer service representative."  Pls.' Exh. 1 at 9-10, 20.  At
all times relevant, Premiere Page, and later USA Mobile, operated
four stores in the Birmingham metropolitan area: the Homewood
office, the Riverchase office, the Fairfield office, and the
Roebuck office.  Pls.' Exh. 5 at 22.  When she began working at
Premiere Page, Jackson was assigned to the Homewood office.
Pls.' Exh. 1 at 9-10, 20.  Within three months of being hired,
Jackson received a promotion to a position in the company's
billing department.  This involved a modest pay increase.  <u>Id</u>.
Later, Jackson received another promotion to the position of
"lead billing customer service supervisor."  <u>Id</u>. at 11, 14.  With
this promotion, her salary increased to $16,500/year.  <u>Id</u>.

In or around March or April 1994, Jackson was transferred to
Premiere Page's Fairfield office.  <u>Id</u>. at 22, 24.  At some point
thereafter, she received a promotion to the position of assistant
store manager of the Fairfield office.  <u>Id</u>. at 15, 16, 19.  With
this promotion, Jackson's salary increased to $20,000/year.  <u>Id</u>.
During the time Jackson worked at the Fairfield office, Eddie
McClain ("McClain"), the company's inside sales manager, was her
direct supervisor.  <u>Id</u>. at 24-25; Pls.' Exh. 8 at 138-39.

In December 1994, USA Mobile, a national pager service

2

company, purchased Premiere Page. Pls.' Exh. 5 at 31. USA
Mobile hired Phil Lombardo ("Lombardo") in or around March or
April 1995, to be the general manager of its offices in the
Birmingham area. Id. at 20-22. As general manager, Lombardo's
responsibilities included reorganizing Premiere Page to conform
to USA Mobile's corporate structure. Id. at 31, 66.

In or around April 1995, USA Mobile fired the store manager
at its Fairfield office. Pls.' Brf. at 24. According to
Jackson, almost immediately after this event, she began to
perform the duties of the store manager in addition to her own.
Pls.' Exh. 1 at 30. Jackson claims that she worked in this dual
capacity until June 1, 1995. It is undisputed that, while
Jackson purportedly served in this dual capacity, she did not
receive any official increase in her pay. Jackson maintains
that, during this two-month period, she complained to McClain on
several occasions that she wanted and needed a pay increase as a
result of her added responsibilities. Id. at 28-29. Apparently,
McClain agreed because, according to Jackson, he instructed her
to pad her time card with extra hours in order to boost her
compensation. Id. Time card falsification is a terminable
offense at USA Mobile. Def.'s Exh. H at 20-21.

On or around June 1, 1995, Lombardo officially promoted
Jackson to the position of store manager for the Fairfield

3

office.[1]  With her promotion to store manager, Jackson's salary increased to $22,000/year plus commission.  Pls.' Exh. 60. Shortly after she received this promotion, Jackson submitted her time card for the period May 29 through June 9, 1995.  For some reason, Mary Moon ("Moon"), Lombardo's administrative assistant, suspected that Jackson's time card included hours that she had not, in fact, worked.  Pls.' Exh. 4 at 89-90.  Moon informed Lombardo of the apparent discrepancy, and they concluded that Jackson had falsified her time card.  Id. at 98-99; Pls.' Exh. 5 at 216.

On June 9, 1995, Lombardo discharged Jackson for time card falsification.  Def.'s Brf. at 4; Pls.' Exh. 1 at 53-54.  On November 16, 1995, Jackson filed a charge of discrimination with the Equal Employment Opportunity Commission.  She joined this action by amended complaint on July 29, 1996.

## II. *Summary Judgment Standard*

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and

---

[1]     There is some confusion over the exact title of the position Jackson received at this time.  In her deposition and brief, Jackson refers to this position interchangeably as either store manager or customer service supervisor.  Lombardo testifies that he promoted her to the position of "inside sales supervisor."  Pls.' Exh. 5 at 209.  In part, this confusion appears to be a product of the corporate reorganization that was ongoing at the time.  To minimize confusion, the court will refer to the position simply as store manager.

4

that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Fed.R.Civ.P.  In addition, the Eleventh Circuit has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  <u>Turnes v. AmSouth Bank, N.A.</u>, 36 F.3d 1057, 1061 (11th Cir. 1994).  USA Mobile has invoked Rule 56.

### III. *Discussion*

As noted above, Jackson brings four separate, if connected, claims against USA Mobile.[2]  First, she alleges that the company failed to promote her on account of her race.  Second, she alleges that USA Mobile gave her a less desirable job assignment because of her race.  Third, she alleges that the company failed to pay her the same wage as similarly situated whites.  Finally, she alleges that her discharge from the company was racially motivated.  The court will address each of these claims in turn.[3]

---

[2]     Paragraphs 15-19 and paragraph 36 of Jackson's First Amended Complaint allege a number of claims.  However, in her brief opposing USA Mobile's motion for summary judgment, Jackson does not address any claims other than those discussed herein.  Therefore, the court assumes for purposes of this opinion that Jackson has abandoned all other claims except those addressed in her opposition brief.  <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir.) (explaining that "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"), *cert. denied*, 516 U.S. 817, 116 S.Ct. 74 (1995).

[3]     Jackson brings each of her claims pursuant to both Title VII and § 1981.  Except as otherwise noted, the court will allow her claims to proceed under both statutes.

### A. Jackson's Failure to Promote Claims

As noted above, in April 1995, USA Mobile discharged the store manager of its Fairfield office.  Jackson claims that, following the store manager's discharge, she assumed the store manager's duties in addition to her duties as assistant store manager.  Jackson also claims that she effectively performed both jobs until she was promoted to the position of store manager on June, 1, 1995.  Jackson now alleges that USA Mobile's failure to promote her to the position of store manager in April 1995 was racially motivated.

As explained elsewhere in this case, in order to make a prima facie case for discriminatory failure to promote, Jackson must demonstrate: (1) that she is a member of a protected class; (2) the she was qualified for the promotion; (3) that she applied for the promotion and was rejected; and (4) that an equally or less qualified nonminority received the promotion instead.  Combs v. Plantation Patterns, 106 F.3d 1519, 1539 n.11 (1th Cir. 1997). In response to Jackson's allegation, USA Mobile argues that she cannot make out the requisite prima facie case.  The company's argument is well taken.

Jackson makes no discernable effort to show that she can satisfy any of the elements of her prima facie case.[4]  However,

---

[4]     Jackson's entire argument in defense of her promotion claims reads as follows:

Jackson's promotion claim is that she was working as the store

6

even when one assumes that Jackson can make out the first three elements of her prima facie case,[5] it is clear that she cannot satisfy the fourth element.  The record contains no evidence that USA Mobile filled the position of store manager at the Fairfield office with an equally or less qualified nonminority in the interim between the store manager's discharge and Jackson's eventual promotion to that position.  In fact, the evidence is to the contrary.  According to Jackson's deposition testimony, she performed the function of the store manager at the Fairfield office following the prior manager's discharge.  Pls.' Exh. 1 at 24, 28-29.  Therefore, as Jackson has failed to satisfy all the elements of requisite prima facie case, the court concludes that summary judgment for USA Mobile is appropriate on her failure to promote claim.  The mere fact that, during the relevant two-month period, a white employee, Tara Bell ("Bell"), made $27,000/year as the store manager at different USA Mobile location does nothing to undermine this conclusion.  At most, such evidence simply demonstrates that Jackson **may** have a cause of action for

_____

manager or office coordinator without receiving the proper title or pay after the store manager, Geraldine Sanders, was terminated in April of 1995.  As explained above, [Jackson] was making $20,000 in that position while Tara Bell held the official title and made $27,000.

Pls.' Brf. at 24.

[5]     Given that there is no evidence that the company ever rejected Jackson's application for the position of store manager, this is a fairly generous assumption.  In fact, the evidence suggests that the company did not even seek applicants for the position of store manager until just before Jackson received that position.  Pls.' Exh. 1 at 38-39.

disparate treatment with respect to her compensation.

### B. Jackson's Job Assignment Claims

Jackson alleges that she and other black employees were assigned to USA Mobile's Fairfield location because of their race. As support for this claim, Jackson says that her supervisor, McClain, once joked that the company assigned mostly black employees to the Fairfield store because virtually all of the clientele was black and, thus, could more easily relate to other blacks. Pls.' Exh. 1 at 34-35, 39. According to Jackson, McClain's joke constitutes **direct** evidence of racial discrimination. Pls.' Brf. at 16-17.

As discussed elsewhere in this case, the Eleventh Circuit defines direct evidence as "evidence, which if believed, proves the existence of fact in issue without inference or presumption." Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998). Given this narrow definition, it is well settled in this circuit that "not every remark made in the workplace constitutes direct evidence of discrimination." Allen v. City of Athens, 937 F. Supp. 1531, 1538 (N.D. Ala. 1996). Indeed, statements by non-decisionmakers, or statements by decisionmakers that do not related to the challenged decision, do not qualify as such direct evidence. See Trotter v. Bd. of Trustees of the Univ. of Ala., 93 F.3d 1449, 1453-55 (11th Cir. 1996) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 277, 109

8

S.Ct. 1775, 1804-05 (1989) (O'Connor, J., concurring)).

In light of the above standard, it is clear that McClain's joke does not constitute direct evidence of racially motivated job assignments at USA Mobile. It is undisputed that McClain had no decisionmaking authority regarding job assignments at USA Mobile. Thus, his joke, if it was told, amounts to nothing more than an unfortunate and unprofessional stray remark that, standing alone, does nothing to advance Jackson's claim.

Perhaps in recognition of this fact, Jackson also presents circumstantial evidence in support of her job assignment claim. More specifically, she points to the fact that, in March 1995, all of the "customer service representatives" (the employees who assist walk-in customers) at the Fairfield store were black.[6] Pls.' Brf. at 5-6. USA Mobile does not dispute this evidence. According to Jackson, this evidence, coupled with McClain's joke, demonstrate that the company made job assignments based on race.

In <u>Ferrill v. Parker Group, Inc.</u>, 967 F. Supp. 472 (N.D. Ala. 1997), this court confronted a similar claim. There, the defendant, a "get out the vote" organization, employed a technique known as "race-matched" calling. As its name implies, with race-matched calling, black callers contact only black voters, and white callers contact only white voters. The theory

---

[6]     According to Jackson, this group included Ingar Bass, John Bethune, Kenneth Cotton, Alberdeina Henderson, Annette Lipscomb, Eric Robinson, Evelyn Morse, Sheryl Person, Michael Streety, Samuel Waters, and Venita Watkins. Pls.' Exh. 7 at ¶ 3.

behind this technique was that voters can more readily identify
with and, thus, respond to callers of their own race.  The
plaintiff complained that race-matched calling was discriminatory
under § 1981, and this court agreed.  In so doing, the court
observed:

> It is well established that assignment of job duties based
> solely on race violates Title VII, and accordingly § 1981.
> (Citation omitted).  *This is true even where the
> discriminatory assignment is benign or well intentioned.*
> (Citation omitted).  Employers are forbidden by § 1981, and
> the other relevant employment discrimination statutes, from
> assigning work based on stereotyped assumptions, even if
> real world exigencies make such stereotyping . . .
> desirable.

Id. at 475 (emphasis supplied).

The similarity between the instant case and Ferrill is
obvious.  Like the plaintiff in Ferrill, Jackson has presented
evidence — most notably, McClain's "joke" — which suggests that
USA Mobile made job assignments to its Fairfield office based on
racial stereotypes and related considerations.[7]  While this
evidence may not provide conclusive proof that the company made
race-based job assignments, in the court's opinion, when it is
viewed in the context of the entire record, it is sufficient to
create a jury question on that issue.  Accordingly, the court

---

[7]     USA Mobile argues that McClain's remark is inadmissible as
hearsay.  This argument is not well taken.  As the USA Mobile employee with
responsibility for operations at the Fairfield office, McClain's statement
concerns a matter within the scope of his authority.  Thus, it qualifies as an
admission and is nonhearsay.  Rule 801(d)(2)(D), Fed.R.Evid.; see E.E.O.C. v.
HBE Corp., 135 F.3d 543, 552 (8th Cir. 1998) (concluding that hotel manager's
statements concerning hiring policy for hotel's bar were admissions because
bar operations were within manager's authority).

concludes that summary judgment is not appropriate on Jackson's job assignment claim.

### C. Jackson's Unequal Pay Claims

Jackson also alleges that USA Mobile failed to pay her the same wage paid to similarly situated whites. More specifically, Jackson claims that, between April and June 1995, she unofficially assumed the duties of store manager for the Fairfield office and, yet, failed to receive a corresponding increase in her pay. Rather, during this period, the company continued to pay Jackson $20,000/year — the same salary she earned as assistant store manager. According to Jackson, this salary is far below what the company paid to white store managers. As support for this claim, Jackson points to Tara Bell ("Bell"), whom she claims made $27,000/year as a store manager or "customer service supervisor" before resigning in June 1995.[8]

In order to make out a prima facie case for wage discrimination under Title VII and § 1981, Jackson must demonstrate: (1) that she is a member of a protected class; and

---

[8] As additional support for this claim, Jackson points to a statement she attributes to McClain. According to Jackson, McClain once said that "he told [Lombardo] that if he had gone back and told those Niggers in the Fairfield store what you are paying the people in Riverchase, they would all get up and walk out." Pls.' Exh. 1 at 40. Jackson contends that McClain's remark constitutes **direct** evidence of wage discrimination. Her contention is not well taken. Pls.' Brf. at 20-21. It is undisputed that McClain had no decisionmaking authority with respect to compensation at USA Mobile. Thus, as explained above, his statement does not constitute direct evidence as defined by the Eleventh Circuit. Rather, it is simply another stray remark illustrating McClain's consistent lack of professionalism in the workplace.

11

(2) that her job was substantially similar to higher paying jobs occupied by white employees. Mulhall v. Advance Sec., Inc., 19 F.3d 586, 598 (11th Cir. 1994) (citing Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992)). If Jackson makes out her prima facie case, then the burden of production shifts to USA Mobile to offer a legitimate, nondiscriminatory reason that explains the pay disparity. Meeks v. Computer Assocs. Internat'l, 15 F.3d 1013, 1019 (11th Cir. 1994). Finally, if USA Mobile meets this exceedingly light burden, then the burden shifts to Jackson to show by a preponderance of the evidence that the reason given by the company is, in fact, pretext for race discrimination. Id.

USA Mobile argues that Jackson cannot make out her prima facie case. In particular, the company maintains that she cannot show that she and Bell occupied substantially similar positions. This argument is not well taken.

When the record evidence is viewed in the light most favorable to Jackson, it appears that she can satisfy her prima facie burden. Three considerations support this conclusion. First, it is undisputed that, during the period April to June 1995, Jackson earned only $20,000/year whereas Bell made $27,000/year. Second, it is undisputed that, during the period April to June 1995, Jackson unofficially performed as store manager or "customer service supervisor" for the Fairfield 5

12

office.   Third, in its supplemental response to plaintiffs'
request for production of documents, USA Mobile identifies Bell
as an employee who was similarly situated to Jackson.  Pls.' Exh.
56 at 2.   In the court's opinion, given the relaxed standard of
"similarity" associated with the second element of Jackson's
prima facie case, this evidence is sufficient to create an
inference of wage discrimination during at least the two-month
period that Jackson unofficially performed as store manager for
the Fairfield office.[9]

As USA Mobile fails to articulate a legitimate,
nondiscriminatory reason to rebut Jackson's prima facie case, the
court concludes that summary judgment is not appropriate on her
unequal pay claims.

### D. Jackson's Discharge Claims

Lastly, Jackson alleges that her discharge for time card
falsification was, in fact, racially motivated.   More
specifically, she claims that, by immediately discharging her for
this offense, USA Mobile disciplined her more severely than it
did other white employees who also were guilty of time card
falsification.   Although it is more precise to describe this
claim as one for disparate treatment in workplace discipline,

---

[9]     It is well settled that neither Title VII nor § 1981 require the
more exacting standard of "substantial equality" between positions required by
the Equal Pay Act, 29 U.S.C. § 206(d)(1).  <u>Miranda</u>, 975 F.2d at 1529 n.15; <i>see
also</i> <u>Mulhall</u>, 19 F.3d at 598 (observing that "standard for 'similarity' in
Title VII cases is relaxed").

both parties refer to it as Jackson's discharge claim.  To prevent confusion, the court will do the same.

An employee makes out a prima facie case for disparate treatment in workplace discipline if she can show: (1) that she is member of a protected class; and either (2) that she did not violate the work rule in question; or (3) that she engaged in misconduct similar to that of a nonminority and, yet, that she received more severe discipline than the nonminority.  Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989).  If Jackson is able to establish a prima facie case of disparate treatment in workplace discipline, then the court will go forward with a burden shifting analysis virtually identical to the one outlined for her unequal pay claims.  *See* Armstrong v. Flowers Hosp., 33 F.3d 1308, 1313-14 (11th Cir. 1994) (explaining analytical framework for disparate treatment in workplace discipline claim).

Jackson attempts to make out a prima facie case by showing that USA Mobile disciplined her more severely than it did Jennifer Shadix ("Shadix"), a white employee whom Jackson claims also engaged in time card falsification.  More specifically, Jackson claims that managers at USA Mobile knew that Shadix falsified her time card and, yet, they failed to discharge her for that offense.[10]  On the other hand, USA Mobile discharged

---

[10]     The record reveals that USA Mobile ultimately discharged Shadix on December 12, 1995, for **tardiness**, not for time card falsification.  Def.'s Exh. K.

14

Jackson immediately after they suspected that she had falsified her time card.

In response, USA Mobile argues that Jackson and Shadix did not engage in similar misconduct — Shadix was habitually tardy whereas Jackson falsified her time card. The company's argument is unpersuasive. Jackson puts forward evidence showing that Shadix falsified her time card on more than one occasion. Pls.' Exh. 36; Pls.' Exh. 37 at ¶ 3. She also puts forward evidence indicating that, on at least one occasion, managers at USA Mobile were aware that Shadix did so. Pls.' Exh. 37 at ¶ 3. USA Mobile does not dispute this evidence. Consequently, in the court's view, this evidence is sufficient to establish that Jackson and Shadix engaged in similar misconduct, and it concludes that Jackson has made out a prima facie case on her discharge claim.

However, by articulating a legitimate, nondiscriminatory reason for Jackson's discharge, USA Mobile has successfully rebutted any inference of discrimination created by her prima facie case. The company clearly claims to have discharged Jackson for time card falsification. Pls.' Exh. 1 at 53-54. Accordingly, the burden now shifts to Jackson to show that this reason is merely a pretext for race discrimination.

To establish pretext, Jackson "has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a

15

reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997). As evidence of pretext, Jackson relies on the fact that, despite being aware that Shadix falsified her time card, USA Mobile did not discharge Shadix for that offense. In contrast, the company immediately discharged Jackson when it suspected that she had altered her time card.

Although it is an extremely close call, when the evidence is viewed in the light most favorable to Jackson, the court concludes that she has created a jury issue as to pretext. As noted already, USA Mobile puts forward nothing to rebut plaintiff's contention that company managers knew Shadix falsified her time card and yet took no action. Considering that Lombardo described Jackson as a good employee, that the company promoted her at least three times during her two-year tenure, that Lombardo stated that he would not tolerate time card falsification at USA Mobile, and that Shadix was, at best, a marginal employee by comparison, it is possible that a jury would find that something other than the mere fact that Jackson falsified her time card — something she claims that McClain instructed her to do — motivated USA Mobile's decision to discharge her. Therefore, as per <u>Combs</u>, summary judgment is not appropriate on the discharge claim.

16

### IV. *Conclusion*

The court will enter a separate and appropriate order in accordance with this memorandum opinion.

DONE this ____ 15 ____ day of April, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

17